UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANGELA L., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:23-cv-02172-MG-MPB |
| | ) |
| LELAND DUDEK, Acting Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

On April 23, 2021, Plaintiff Angela L. applied for Title II Disability Insurance Benefits ("DIB") from the Social Security Administration ("SSA"), alleging a disability onset date of January 6, 2021. [Filing No. 9-2 at 12.] Her application was initially denied on October 1, 2021, [Filing No. 9-3 at 2-9], and upon reconsideration on December 29, 2021, [Filing No. 9-3 at 10-15]. Administrative Law Judge ("ALJ") Latanya Richards conducted hearings on October 17, 2022. [Filing No. 9-2 at 62-89.] The ALJ issued a decision on November 8, 2022, concluding that Plaintiff was not entitled to receive benefits. [Filing No. 9-2 at 11-26.] The Appeals Council denied review on September 29, 2023. [Filing No. 9-2 at 2-6.]

On December 4, 2023, Plaintiff filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.] The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ.

---

[1] Leland C. Dudek became the Acting Commissioner of Social Security on February 19, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

P. 73. [Filing No. 6; Filing No. 7.] For the following reasons, the Court **AFFIRMS** the decision of the ALJ denying Plaintiff benefits.

# I.
# STANDARD OF REVIEW[2]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens,* 888 F.3d at 327. For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek,* 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens,* 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch,* 981 F.3d at 601 (quoting *Summers v. Berryhill,* 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the

---

[2] The regulations governing disability determinations for benefits under Title II and Title XVI are identical in virtually all relevant respects unless otherwise noted.

conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform His past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform His own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's

decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Plaintiff was 59 years old on January 6, 2021—the date of her alleged onset of disability. [Filing No. 9-3 at 3.] Plaintiff has at least a high school education and has past relevant work as a customer service representative and payroll clerk. [Filing No. 9-3 at 7.] Plaintiff's applications allege that she can no longer work because of a stroke on January 6, 2021. [Filing No. 9-3 at 3.] The stroke affected her right side, cognitive levels/skills were affected by the stroke, aphasia, high blood pressure, and high cholesterol. [Filing No. 9-3 at 3.] Following the October 2022 hearing, the ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a)(4) and concluded that Plaintiff was not disabled. [Filing No. 9-2 at 12-25.] Specifically, the ALJ found as follows:

- At Step One, Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2026, and has not engaged in substantial gainful activity since January 6, 2021, the alleged onset date. [Filing No. 9-2 at 14.]

- At Step Two, Plaintiff "has the following severe impairments: hypertension, obesity, status post cerebrovascular accident (CVA), mild neurocognitive disorder secondary to CVA, and depressive disorder." [Filing No. 9-2 at 15.]

- At Step Three, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 9-2 at 15.] The ALJ specifically considered Sections 4.00(H)(1), 11.04, and SSR 19-2p. [Filing No. 9-2 at 15.] As to the "paragraph B" criteria for Listings 12.02 and 12.04, the ALJ found that Plaintiff had "mild" limitations in two

4

- functional areas: (1) interacting with others and (2) adapting or managing oneself; and "moderate" limitations in two functional areas: (1) concentrating, persisting, or maintaining pace and (2) understanding, remembering, or applying information. [Filing No. 9-2 at 16-18.]

- After Step Three but before Step Four, Plaintiff had the RFC "to perform medium work as defined in 20 CFR 404.1567(c) except she can perform simple, routine tasks, but not at a production rate pace such as on an assembly line. She can make simple work-related decisions. She must avoid use of hazardous machinery. She can frequently finger and handle with the dominant, right upper extremity." [Filing No. 9-2 at 17.]

- At Step Four, the ALJ found Plaintiff is unable to perform past relevant work. [Filing No. 9-2 at 23.]

- At Step Five, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including day worker, cleaner, and battery stacker. [Filing No. 9-2 at 23-24.] The ALJ found Plaintiff was not under a disability from January 6, 2021, though the date of this decision. [Filing No. 9-2 at 24-25.]

### III.
### DISCUSSION

Plaintiff. argues the ALJ erred in three aspects: (1) in her RFC evaluation by failing to build a logical bridge between the record evidence and her ultimate conclusions as required under SSR 96-8p; (2) in her failure to properly address medical opinion evidence under 20 CFR § 404.1520c; and (3) by failing to provide a supportable basis for finding Plaintiff's subjective statements were inconsistent with any record evidence. [Filing No. 11 at 2.] The Commissioner ultimately argues the ALJ (1) sufficiently supported her RFC finding; (2) reasonably found Dr. Krowel's opinion to be persuasive and assessed limitations consistent with those portions, but reasonably rejected other parts as they were not in vocationally relevant terms; and (3) the ALJ's analysis of Plaintiff's subjective symptoms was supported. [*See generally,* Filing No. 13.]

A.      **ALJ's RFC Assessment of Medium Work**

The RFC represents "the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). *See* 20 C.F.R. § 404.1545(a)(1). "The RFC assessment must ... identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, Fed. Reg. 34474-01 (July 2, 1996). The Court's "role is to determine whether the ALJ applied the right standards and produced a decision supported by substantial evidence." *Jeske v. Saul*, 955 F.3d 583, 595-96 (7th Cir. 2020). "The ALJ is not required to address every piece of evidence or testimony presented but must provide a 'logical bridge' between the evidence and the conclusions so that [the Court] can assess the validity of the agency's ultimate findings." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The ALJ has the final responsibility for determining a claimant's RFC, though medical sources are to be considered. 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 404.1546(c). In assessing a claimant's RFC, the ALJ must weigh the evidence and consider conflicting medical opinions considering all other evidence in the record. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). "Only if there is insufficient evidence to resolve an inconsistency or insufficiency within the record evidence itself may an ALJ recontact the medical source or ask others for more information." *Kelli H. v. Saul,* 2020 WL 1501877, at *3 (S.D. Ind. Mar. 30, 2020) (citing 20 C.F.R. § 416.920b(b)(2)). An ALJ, while not having to rely on opinion evidence in formulating RFC limitations, must provide a narrative with citations to record evidence for how these restrictions were derived pursuant to SSR 96-8p. "[T]he 7th Circuit has long cautioned ALJ's against succumbing to the temptation to play doctor" when deciding residual functional capacity. *See, e.g.*, *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990); *Dixon v. Massanari*, 270 F.3d 1171,

1177 (7th Cir. 2001); *Lopez v. Barnhart,* 336 F.3d 535 (7th Cir. 2003), *Moon v. Colvin¸*763 F.3d 718, 722 (7th Cir. 2014). Only when the ALJ's conclusion is not supported by medical evidence in the record has the ALJ inappropriately played doctor. *See, e.g., Engstrand v. Colvin¸* 788 F.3d 655, 660-61 (7th Cir. 2015); *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015).

Here, the ALJ determined that Plaintiff had the RFC to perform medium work, defined as involving lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weight up to 25 pounds and requires an ability to do sedentary and light work. 20 C.F.R. § 404.1567(c). The ALJ ultimately added limitations in the RFC, including performing simple, routine tasks, but not at a production rate pace such as on an assembly line, making simple work-related decisions, avoiding use of hazardous machinery, and frequently fingering and handling with the dominant, right upper extremity. [Filing No. 9-2 at 17.]

First, in attacking the ALJ's review of the medical record, Plaintiff argues the ALJ did not "reconcile with the medical evidence" and that the medical findings "did not connect to a medium work requirement or the requirements to complete an eight-hour day." [Filing No. 11 at 5.] In support, Plaintiff says none of the medical opinions of record provide for medium work. [Filing No. 11 at 5-6.] Plaintiff similarly argues that the ALJ found she had decreased sensation in her right hand and leg, but the ALJ did not explain why or how this supported medium exertion, and though the ALJ mentioned Plaintiff's daily activities, she did not discuss how they equated to performing work-related job functions. [Filing No. 11 at 6.] Plaintiff then asserts that the ALJ impermissibly substituted her lay opinion for expert opinion evidence by assessing the medium RFC herself, rather than providing medical support or explaining how she arrived at her conclusion. [Filing No. 11 at 6-7.] As for the mental RFC findings, Plaintiff similarly argues that

7

the ALJ made unqualified medical findings and the mental limitations she assessed lacked any evidentiary basis because no medical source opined to such limitations. [Filing No. 11 at 8-9.]

In response, the Commissioner contends that the ALJ was not selective in her consideration of the record medical evidence, acknowledging Plaintiff's complaints of right-sided weakness, but noting that despite complaints, her history of treatment showed mild or minimal right-sided weakness at times. [Filing No. 13 at 4.] The Commissioner then argues that the ALJ did more than summarize the medical findings and she did not rely on her own lay interpretations of the medical evidence. [Filing No. 13 at 6-7.] In support, the Commissioner asserts that no medical source opined to greater physical RFC limitations than those assessed by the ALJ, and the ALJ provided an evidentiary basis for these greater limitations, as was required. [Filing No. 13 at 8.] Lastly, the Commissioner contends that Plaintiff's argument that the ALJ's RFC did not reconcile with the medical evidence amounts to an improper invitation for the Court to reweigh the evidence. [Filing No. 13 at 6.]

In reply, Plaintiff contends that the Commissioner's summary of evidence does not replace meaningful analysis. She once again argues that the ALJ fails to cite where the evidence reflects her ability to lift 50 pounds occasionally and 25 pounds frequently or stand or walk for six hours in an eight-hour day. [Filing No. 14 at 3-4.] Plaintiff argues that if the ALJ lacked evidentiary support for an ability to lift 25-to-50 pounds, she must seek clarification from a medical source rather than interpreting medical data. [Filing No. 14 at 5.] Plaintiff then notes that her doctors recommended she not return to her last job, which she argues was performed at the sedentary level, and even had trouble performing the previous job when she attempted teleworking. [Filing No. 14 at 4.] She argues that if she could not perform this sedentary job, she logically could not perform work at the medium level. Further, she alleges trouble brushing her teeth, carrying a ten-pound

8

laundry basket, and being advised to use handrails, and though she had overall improvement, she did not recover to her baseline. [Filing No. 14 at 4.] Plaintiff contends that the ALJ did not wrestle with this evidence which were in direct opposition to the ALJ's findings.

Overall, the ALJ properly analyzed the medical evidence and constructed the RFC. The ALJ noted that Plaintiff had a history of hypertension and suffered a stroke in January 2021, resulting in mild neurocognitive disorder. [Filing No. 9-2 at 18.] The ALJ then detailed Plaintiff's mechanical thrombectomy, as well as her slightly reduced upper extremity strength following the surgery, but noted she had grossly intact sensation and gait, as well as well-controlled blood pressure with medication. [Filing No. 9-2 at 18.] Further, the ALJ recounted Plaintiff's rehabilitation, lasting six days, and upon discharge she had made "swift functional gains through participation in therapies." [Filing No. 9-2 at 18.] Regarding her continued outpatient therapy, the ALJ noted that Plaintiff met all six of her long-term physical therapy goals, and similarly satisfied all her occupational therapy goals. [Filing No. 9-2 at 19.] The ALJ went on to note that during the April 2021 neurological examination, Plaintiff reported "very minimal weakness" and improved strength, though upon examination, she had decreased right hand and right lower extremity sensation, resulting in recommendations for continued physical therapy and neuropsychological testing. [Filing No. 9-2 at 19.] The ALJ concluded that while Plaintiff exhibited decreased sensation of her right extremity, she displayed normal muscle and grip strength bilaterally, finger abduction, dexterity, range of motion, and reflexes, and followed simple directions without difficulty. [Filing No. 9-2 at 19.]

Within the mental RFC analysis, the ALJ discussed Plaintiff's treatment history, as well as the results of examinations with her neurologist, primary care doctor, consulting physician Dr. Strum, and two examinations with neuropsychologist Dr. Krowel. [Filing No. 9-2 at 20-21.] The

9

ALJ also noted Dr. Krowel's diagnoses—mild major depressive disorder and mild neurocognitive disorder due to traumatic brain injury—but further noted Dr. Krowels second examination showing Plaintiff's stability and improvements, though she remained impaired in her ability to inhibit cognitive interference and complete speeded attention tests accurately. [Filing No. 9-2 at 21.] In her conclusion, the ALJ specifically noted her consideration of "the claimant's ongoing difficulties with processing and selective attention for speeded tasks when limiting her to simple, routine, nonproduction paced tasks involving simple work-related decisions and avoidance of hazardous machinery." [Filing No. 9-2 at 21.]

Plaintiff is correct that none of the medical opinions provide for medium work—though some provided various work accommodation suggestions—but they also did not provide for *any* physical RFC limitations in vocationally relevant terms. It is Plaintiff's burden to establish not just the existence of her conditions, but to provide evidence that they support specific limitations affecting her capacity to work. *Weaver v. Berryhill*, 746 F. App'x 574, 578-579 (7th Cir. 2018). Without any physician of record indicating that she was limited to greater physical limitations than those opined by the ALJ, the ALJ did not err in evaluating her capable of medium work. The Seventh Circuit has held that "[w]hen no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)).

Moreover, the ALJ did not ignore Plaintiff's alleged right-sided issues. In the discussion of the RFC findings, the ALJ detailed the findings of the consultative medical examiner Dr. Strum, acknowledging Plaintiff's possible decreased right-sided sensation, but also her display of normal muscle and grip strength bilaterally, finger abduction, dexterity, range of motion, and reflexes. [Filing No. 9-2 at 19.] She also detailed the two neurological examinations by Dr. Krowel,

10

indicating decreased right hand and right lower extremity sensation, but normal fine finger movements, heel-tapping, gait, station, posture, and motor strength, tome, and activity. [Filing No. 9-2 at 19.]

Based on the predominantly normal examination findings from the consultative examiner and two neurological examinations, as well as the absence of any opinion that assessed greater limitations than the ALJ, the ALJ's RFC finding of medium work is supported by substantial evidence.

### B.  Medical Opinion Evidence

Next, Plaintiff contends that the ALJ did not properly evaluate Dr. Krowel's opinion. [Filing No. 11 at 9-10.] Plaintiff argues Dr. Krowel did not opine that she could perform simple work and the ALJ did not consider Dr. Krowel's workplace accommodations. [Filing No. 11 at 10.] She says that the ALJ was to articulate how she determined that evidence unfavorable to Plaintiff overcame evidence favorable to Plaintiff. [Filing No. 14 at 8.]

For claims filed after March 27, 2017, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(a). Under this regulation, the ALJ must evaluate the persuasiveness of each medical opinion by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 416.920c(c). Notably, the regulations for evaluating medical opinion evidence require the

ALJ to analyze the persuasiveness of "*all* of the medical opinions" in the record. 20 C.F.R. § 416.920c(b) (emphasis added).

Under the regulations, the ALJ will explain how she considered the factors of supportability and consistency, the two most important factors in determining the persuasiveness of a medical opinion. *See* 20 C.F.R. § 404.1520c(b)(2). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

An ALJ may not rely solely on vagueness in rejecting a medical opinion. *See Tanya S. v. Kijakazi*, 2021 WL 6201733, at *12 (N.D. Ind. Dec. 31, 2021) (remanding where the ALJ "simply rejected [the consultative examiner's opinion] for vagueness, with minimal analysis."). However, "[t]he duty to recontact [a consultative examiner] only applies where the evidence is insufficient to reach a decision" and where "the record as a whole inadequate to determine disability." *Brenda S. v. Kijakazi*, 2021 WL 3749048, at *4-5 (S.D. Ind. Aug. 25, 2021); *see also See Britt v. Berryhill*, 889 F.3d 422, 427 (7th Cir. 2018) (explaining that an ALJ is not required to recontact a doctor where the record contains adequate information to make a decision on disability).

Earlier in the ALJ's opinion, the ALJ detailed Dr. Krowel's examination results. [Filing No. 9-2 at 20-22.] The ALJ later found Dr. Kowel's opinion somewhat persuasive. [Filing No. 9-2 at 22.] Dr. Krowel stated that "[a]ppropriate and reasonable workplace accommodations for

12

executive functioning and processing speed would include (additional accommodation ideas are available at AskJan.org):" additional time to complete tasks; flexibility in scheduling and breaks; leave to seek treatment; a cubicle door or quiet space to work; noise canceling earbuds or headset; recorded directives and written instructions; and continued remote work. [Filing No. 9-12 at 390.] Dr. Krowel recommended that if Plaintiff chose to return to work, her employer should honor reasonable workplace accommodations to minimize stress while also allowing her to contribute to her team. [Filing No. 9-12 at 390.]

In assessing the persuasiveness of Dr. Krowel's opinions, the ALJ found they were consistent with Plaintiff's display of "variable executive functioning with impaired processing speed and mental flexibility," but also noted Plaintiff had "intact visual spatial skills, attention, language, memory, and motoric functioning." [Filing No. 9-2 at 22.] The ALJ found that while the neuropsychologist provided for "some work accommodations, she failed to provide specific functional limitations in vocationally relevant terms secondary to the claimants neuropsychological deficits," but ultimately found that limitations to simple, routine, nonproduction paced tasks involving simple work-related decisions were in full consideration of Dr. Krowel's opinion. [Filing No. 9-2 at 22-23.] While Dr. Krowel did not provide her opinion in vocationally relevant terms, the ALJ found the opinion consistent with Plaintiff's display of variable executive functioning with impaired processing speed and mental flexibility. [Filing No. 9-2 at 22.]

Plaintiff argues the ALJ did not assess the supportability of the opinions at all. The Court does not agree. The ALJ ultimately concluded that she found Dr. Krowel's opinion "somewhat persuasive" because while consistent medical evidence showing Plaintiff's display of variable executive functioning with impaired processing speed and mental flexibility, "she failed to provide

13

specific functional limitations in vocationally relevant terms secondary to the claimant neuropsychological deficits." [Filing No. 9-2 at 22-23.] Plaintiff argues this is not a valid reason to reject a medical opinion. While is true that an ALJ may not rely solely on vagueness in rejecting a medical opinion, *Tanya S.* 2021 WL 6201733, at *12, that is not what happened in Plaintiff's case. Importantly, and as set forth more fully below, the ALJ here did not outright reject Dr. Krowel's opinion. It is well-established that review of the ALJ's opinion is subject to a very deferential standard, and the ALJ need only "minimally articulate" her rationale. *Elder v. Astrue*, 529 F.3d. 408, 413 (7th Cir. 2008). The ALJ in this case clearly did that; analyzing consistency and supportability while ultimately finding the opinion to be somewhat persuasive because the ALJ found it to be not put in "vocationally relevant terms." The Court finds that the ALJ met the applicable standard for minimally articulating her rationally for how she treated Dr. Krowel's opinion, especially considering the additional points set forth below.

The Court notes that ultimately, Dr. Krowel took into consideration Plaintiff's executive functioning and processing speed and found that Plaintiff would require accommodations to minimize stress and overwhelm. [Filing No. 9-12 at 390.] It is clear from the record that the ALJ considered Dr. Krowel's opinion. The ALJ stated that she considered Plaintiff's ongoing difficulties with processing and selective attention for speeded tasks. She also noted Dr. Krowel's conclusion and found the opinion consistent with the evidence. [Filing No. 9-2 at 18-23.] Likewise, the ALJ stated that she developed the RFC based on "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and her analysis shows she considered the medical opinions of record. [Filing No. 9-2 at 17.] The RFC appropriately reflects the ALJ's decision that Dr. Krowel's opinion was "somewhat" persuasive. For example, Dr. Krowel found that Plaintiff would benefit from a "position in which

14

she is not required to complete multiple tasks quickly," [Filing No. 9-12 at 390], and the ALJ limited Plaintiff to "simple, routine, nonproduction paced tasks involving simple work-related decisions." [Filing No. 9-2 at 17.] Because the ALJ incorporated at least some of Dr. Krowel's suggested accommodations into the RFC, the ALJ's opinion exceeds the required minimal articulation standard.

The ALJ considered the consistency and supportability of the opinion. And the ALJ did not reject Dr. Krowel's opinion, rather the ALJ found it to be somewhat persuasive: aspects of it were incorporated in the RFC. But the ALJ found it to be only somewhat persuasive because the ALJ articulated that the opinion did not use vocationally relevant terms. The Court does not find that Plaintiff has shown reversible error on her points raised regarding the ALJ's treatment of Dr. Krowel's opinion.

## C. Subjective Symptom Analysis

Lastly, Plaintiff attacks the ALJ's subjective symptom analysis, alleging it runs contrary to SSR 16-3p. [Filing No. 11 at 14.] Plaintiff argues that the ALJ failed to address her diminished concentration, diminished focus, and need for frequent breaks, daily living activities, and treatment. Plaintiff notes her consistent work history supported her allegations of disabling symptoms, but the ALJ did not explain how she considered this evidence that favored Plaintiff. She then argues the ALJ did not discuss how "her physical examinations, CTs, and MRIs showing acute left MCA infarct with some hemorrhagic transformation did not support her allegations of cognitive difficulties, dysphagia, right hemiparesis, left and right-sided body pain, right shoulder pain, right arm pain, right leg pain, right hand weakness, balance problems, stress, anxiety, she could not walk over ten minutes, lacked reading comprehension, and had diminished comprehension of verbal commands, and she needed repetition." [Filing No. 11 at 14-15.] Lastly,

15

Plaintiff alleges the ALJ did not discuss the frequency with which she experiences bad versus good days and the impact that major depressive disorder would have on her ability to work. [Filing No. 11 at 15.]

An ALJ's evaluation of subjective symptoms will be upheld unless it is "patently wrong." *Shidler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). The ALJ's subjective symptom evaluation may be patently wrong where the ALJ fails to "build an accurate and logical bridge between the evidence and the result." *Ribuado v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (internal citation and quotation marks omitted). The ALJ must provide specific reasons supporting her or her evaluation that are supported by the record. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

ALJs use a two-step process to evaluate an individual's subjective symptoms. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). First, an ALJ must determine whether a claimant has "an underlying medically determinable physical or mental impairment that could reasonably be expected to produce an individual's symptoms." *Id.* at *3. If the claimant is found to have such a medically determinable impairment at step one, the ALJ moves to step two where the ALJ must consider all the evidence in the record to evaluate the intensity and persistence of an individual's symptoms and determine "the extent to which an individual's symptoms limit her or her ability to perform work-related activities." *Id.* at *4. When assessing a claimant's symptom testimony, the ALJ considers the factors set forth in 20 C.F.R. § 404.1529(c)(3), *i.e.*, (1) a claimant's daily activities, (2) the location, duration, frequency of the pain or other symptoms, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medication, (5) treatment received for relief of pain or other symptoms, (6) measures the claimant uses to relieve pain or other symptoms, and (7) other factors concerning a claimant's functional limitations and

restrictions due to pain or other symptoms. *Id.* "[A]n ALJ need not discuss every detail related to every factor…." *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021).

An individual's statements about intensity, persistence, and limiting effects of symptoms may not be disregarded "***solely*** because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." SSR 16-3p, 2017 WL 5180304, at *5 (emphasis added); *see also Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) (holding that an ALJ "cannot disbelieve [a claimant's] testimony solely because it seems in excess of the 'objective' medical testimony"). That is because "[t]he etiology of pain is not so well understood, or people's pain thresholds so uniform, that the severity of pain experienced by a given individual can be 'read off' from a medical report." *Johnson*, 449 F.3d at 806.

Given the substantial deference afforded to an ALJ's credibility determinations, the Court finds that the ALJ's subjective symptom analysis in this case was not "patently wrong" and does not provide a basis for reversal. The ALJ considered the record as a whole, including the factors set forth in 20 C.F.R. §§ 404.1529 and SSR 16-3p, and found that the intensity, persistence, and limiting effects of Plaintiff's conditions were less severe than she alleged. [Filing No. 9-2 at 17.]

First, Plaintiff broadly alleges that the ALJ failed to evaluate her "diminished concentration, diminished focus, and need for frequent breaks, daily living activities, and treatment." [Filing No. 11 at 14.] The ALJ noted Plaintiff's reports of persistent weakness in her arms, legs, and hands, particularly on the right side, but also noted that she could walk, drive, and perform household chores. [Filing No. 9-2 at 18.] The ALJ then noted that during her June and September 2021 neuropsychological evaluations, Plaintiff reported independence with activities of daily living with minimal difficulty, and that she displayed normal muscle and grip strength bilaterally, finger abduction, dexterity, range of motion, and reflexes, and followed simple

17

directions without difficulty. [Filing No. 9-2 at 19 (citing Filing No. 9-12 at 239-253).] Plaintiff's argument here fails.

Second, Plaintiff argues that the ALJ erred in her consideration of Plaintiff's work history. As the Commissioner points out, Plaintiff concedes that an ALJ is not required to explain how she considered a claimant's work history. [Filing No. 11 at 14.] The record shows that Plaintiff had a long work history prior to her alleged onset date. However, the Seventh Circuit has explained that "[a]n ALJ is not statutorily required to consider a claimant's work history, but 'a claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.'" *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016) (quoting *Hill*, 807 F.3d at 868; *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)). The Seventh Circuit has held that "the ALJ's silence [as to the claimant's work history] is not enough to negate the substantial evidence supporting the adverse credibility finding." *Loveless*, 810 F.3d at 508. Thus, contrary to Plaintiff's contentions, the ALJ was not required to single out her work history as a substantial factor in the subjective symptom analysis. Even so, here, the ALJ did consider Plaintiff's work history, noting that she stopped working after her stroke. [Filing No. 9-2 at 14, 18.]

Third, Plaintiff argues that the ALJ did not consider the objective medical evidence that could have favored Plaintiff's subjective statements, specifically her physical examinations, CTs, and MRIs showing acute left MCA infract with some hemorrhagic transformation. [Filing No. 11 at 14-15.] On the same lines, Plaintiff contends that the ALJ failed to support her assessment because she did not mention Plaintiff's testimony that she had good and bad days. [Filing No. 11 at 15.]

In considering the objective medical evidence, the ALJ provided accurate chronologies of Plaintiff's conditions and described how they improved and declined over time; she did not cherry-

pick treatment notes that showed improvement or ignore whole lines of evidence about limiting symptoms. While the ALJ did not detail every symptom in Plaintiff's medical notes, she was not required to do so. *See Gedatus*, 994 F.3d at 901 (finding no error where the ALJ's summary of the plaintiff's medical history did not mention every favorable piece of evidence for the plaintiff). Here, the ALJ ultimately concluded that while there was support for Plaintiff's symptoms, they were not as intense, severe, or limiting as alleged. [Filing No. 9-2 at 18-23.] Given that the ALJ considered the entirety of the record evidence–and found several inconsistencies–she necessarily considered the fact that Plaintiff had "good days" and "bad days." She clearly found that overall, regardless of "good day" or "bad day," Plaintiff's statements of limitation were not so consistent with the record as to warrant further restrictions in the RFC finding. This conclusion was a reasonable weighing of the relevant evidence.

Fourth, Plaintiff argues the ALJ did not consider her activities of daily living, specifically limitations like cleaning and performing personal care. [Filing No. 11 at 15.] Plaintiff also argues that the ALJ equated Plaintiff's activities of daily living with full-time work or placed undue emphasis on them. [Filing No. 11 at 6.] Plaintiff's argument is unavailing. First, reading the ALJ's opinion as a whole, the Court does not find indication that the ALJ placed undue weight on Plaintiff's daily activities or equated them to medium work. And, as noted above, the ALJ discussed Plaintiff's activities of daily living throughout her subjective symptom assessment. For example, the ALJ noted Plaintiff's testimony that she needed a break after sweeping for five minutes and walking ten minutes due to right leg pain. [Filing No. 9-2 at 18.] But the ALJ then noted reports to medical providers that Plaintiff was independent in performing daily activities. [Filing No. 9-2 at 18-20.] Ultimately, reviewing courts take a deferential approach to the ALJ's credibility determinations, and the ALJ need only "minimally articulate reasons for crediting or

19

rejecting evidence of disability" to withstand review. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). The ALJ's reasoning does not need to be "flawless," *Similia v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009), and will be sustained on review despite isolated errors, *see Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009) ("Not all of the ALJ's reasons must be valid as long as *enough* of them are."); *Walcott v. Berryhill*, 2019 WL 2494165, at *8 (S.D. Ind. Feb. 5, 2019) ("Even if this court were to hold that the ALJ should have expressly addressed Plaintiff's activities, any error was harmless because the ALJ provided other reasons for discounting Plaintiff's subjective complaints.").

The Court only reverses symptom analysis under SSR 16-3p when the analysis is "patently wrong," which requires an absence of "explanation and support." *Hess v. O'Malley*, 92 F.4th 671, 679 (7th Cir. 2024) (citing *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). The ALJ provided explanation and support such that reversal is inappropriate.

## IV.
### CONCLUSION

For the reasons detailed above, the Court **AFFIRMS** the ALJ's decision denying Angela L. benefits. Final judgment will issue by separate entry.

Date: 3/27/2025

_____
Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**